Stephen M. Lobbin (CA Bar No. 181195)
sml@smlavvocati.com
**SML Avvocati P.C.**
4640 Cass Street #90142
San Diego, CA 92109
(949) 636-1391

*Counsel for Plaintiff Vision Sphere Labs LLC*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **VISION SPHERE LABS LLC,**<br><br>Plaintiff,<br>v.<br><br>**ASUS COMPUTER INTERNATIONAL,**<br><br>Defendant. | Case No. 4:26-cv-12344<br><br>COMPLAINT FOR PATENT INFRINGEMENT<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Vision Sphere Labs LLC files this Original Complaint for Patent Infringement against Asus Computer International, and would respectfully show the Court as follows:

## I. NATURE OF THE LAWSUIT

1. This is an action for patent infringement under the Patent Laws of the United States, Title 35 United States Code ("U.S.C.") resulting from Asus Computer International, infringing, in an illegal and unauthorized manner and without authorization and/or consent from Vision Sphere Labs LLC, United States

Patent Nos. 7,990,860 and 7,669,028 pursuant to 35 U.S.C. §271, and to recover damages, attorney's fees, and costs.

## II. THE PARTIES

Plaintiff Vision Sphere Labs LLC ("Plaintiff") is a Texas limited liability company with a place of business located at 17350 State Highway 249, Ste 220, Houston, TX 77064.

2. On information and belief, Defendant Asus Computer International ("Defendant") is a corporation organized and existing under the laws of California with a place of business at 48720 Kato Rd., Fremont, California 94538. Defendant has a registered agent C T Corporation System, at 330 N Brand Blvd, Glendale, California 91203.

## II. JURISDICTION AND VENUE

3. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction of such action under 28 U.S.C. §§ 1331 and 1338(a).

4. On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the California Long-Arm Statute, due at least to its business in this forum, including at least a portion of the infringements alleged herein. Furthermore, Defendant is

subject to this Court's specific and general personal jurisdiction because Defendant maintains a place of business at 48720 Kato Rd., Fremont, California 94538.

5. Without limitation, on information and belief, within this state and this District, Defendant has used the patented inventions thereby committing, and continuing to commit, acts of patent infringement alleged herein. In addition, on information and belief, Defendant has derived revenues from its infringing acts occurring within California and this District. Further, on information and belief, Defendant is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from services provided to persons or entities in California and this District. Further, on information and belief, Defendant is subject to the Court's personal jurisdiction at least due to its providing services within California and this District. Defendant has committed such purposeful acts and/or transactions in California and this District such that it reasonably should know and expect that it could be haled into this Court as a consequence of such activity.

6. Venue is proper in this district under 28 U.S.C. § 1400(b). On information and belief, Defendant maintains a place of business at 48720 Kato Rd., Fremont, California 94538. Further Defendant is incorporated in California. On information and belief, from and within this District Defendant has committed at least a portion of the infringements at issue in this case.

7. For these reasons, personal jurisdiction exists and venue is proper in this Court under 28 U.S.C. § 1400(b).

## III. UNITED STATES PATENT NO. 7,990,860

8. Plaintiff incorporates the above paragraphs herein by reference.

9. On August 2, 2011, United States Patent No. 7,990,860 ("the '860 Patent") was duly and legally issued by the United States Patent and Trademark Office. The '860 Patent is titled "Method and System for Rule-Based Sequencing for QoS." A true and correct copy of the '860 Patent is attached hereto as Exhibit 1 and incorporated herein by reference.

10. Vision Sphere Labs LLC is the assignee of all right, title, and interest in the '860 Patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '860 Patent. Accordingly, Vision Sphere Labs LLC possesses the exclusive right and standing to prosecute the present action for infringement of the '860 Patent by Defendant.

11. The invention in the '860 Patent relates to an improved method for communicating data over a network to provide Quality of Service ("QoS") that includes prioritizing the data a communicating the data based at least in part on the priority. (Ex. 1 at Abstract).

12. Communications networks typically include multiple nodes connected by links and are typically bandwidth constrained such that there is more

data to be communicated than bandwidth available at any given point in time. (*Id.* at 1:10-12; 2:51-53). This constraint can be caused by the demand for bandwidth exceeding the supply and/or the available communications technology not supplying enough bandwidth to meet the needs of the user. (*Id.* at 2:54-57). In bandwidth-limited networks, less important data can clog the network and prevent more important data from getting through in a timely fashion or arriving at all. (*Id.* at 2:58-62). Networks can also include internal buffering to compensate for unreliable links in the communications network, which can lead to addition delay or data loss. (*Id.* at 2:62-65). Bandwidth can also change dynamically due to, for example, quality of service, jamming, signal obstruction, and priority reallocation. (*Id.* at 3:10-12).

13. There are known approaches for delivering data over a communications network, including QoS. (*Id.* at 4:16-17). QoS refers to capabilities of a network to provide various forms of guarantees with regard to data that is carried in a communications network. (*Id.* at 4:16-18). The primary goal of QoS is to provide priority such as dedicated bandwidth, controlled jitter and latency, and improved loss characteristics. (*Id.* at 4:28-32). Another important goal of QoS is to make sure that providing priority for one flow does not make other flows fail. (*Id.* at 4:32-33).

14. Current approaches to QoS often require every node in a network to support QoS or at least every node in the network involved in a particular

communication to support QoS. (*Id.* at 4:36-39). This type of approach does not scale well because of the large amount of state information each node must maintain, and the overhead associated with setting up connections. (*Id.* at 4:47-50).

15. Furthermore, existing QoS solutions are often network specific and could only classify messages based on the header such that messages that looked the same to the current QoS systems may have different priorities based on message content. (*Id.* at 4:62-67). This can result in users requiring access to high-priority data being flooded by lower-priority data. (*Id.* at 4:67-5:1).

16. Existing QoS systems also could not provide QoS based on message content at the transport layer of the Open System Interconnection (OSI) seven-layer protocol model. (*Id.* at 5:2-3; 1:51-56). The ‘860 Patent explains that the "Transmission Control Protocol (TCP)," which is the protocol at the transport layer, requires several forms of handshaking and acknowledgements to occur in order to send data," which can result in high latency and loss if the TCP hits time outs and is not able to send much, if any, meaningful data over a network. (*Id.* at 3:51-57).

17. The inventors therefore recognized the need for systems and methods that provide QoS on the edge of a data network and a need for adaptive and configurable QoS systems and methos in a data network. (*Id.* at 5:19-22). The inventions disclosed in the ‘860 Patent were unconventional solutions to problems

arising in the context of communications networks that used existing QoS systems that did not scale well, needed better jitter and latency control, needed improved data loss, and required better QoS than relying on the header. (*E.g.*, *id.* at 1:51-56, 2:58-62, 3:51-57, 4:28-32, 47-50, 4:67-5:3, 5:19-22). The invention improved the technical functioning of computer data networks using an unconventional solution for prioritizing data configured to operate at the transport layer of the protocol stack and based at least in part on a user defined rule.

## IV. UNITED STATES PATENT NO. 7,769,028

18. Plaintiff incorporates the above paragraphs herein by reference.

19. On August 3, 2010, United States Patent No. 7,769,028 ("the '028 Patent") was duly and legally issued by the United States Patent and Trademark Office. The '028 Patent is titled "Systems and Methods for Adaptive Throughput Management for Event-Driven Message-Based Data." A true and correct copy of the '028 Patent is attached hereto as Exhibit 2 and incorporated herein by reference.

20. Vision Sphere Labs LLC is the assignee of all right, title, and interest in the '028 Patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '028 Patent. Accordingly, Vision Sphere Labs LLC possesses the exclusive right and standing to prosecute the present action for infringement of the '028 Patent by Defendant. The '028 Patent expired on September 5, 2022. Prior to this, the '028

Patent was alive during the period of six-years prior to the filing of this Complaint and September 5, 2022.

21. The invention in the ‘028 Patent relates to an improved method for communicating data including prioritizing data by assigning a priority to the data, analyzing a network to determine a status of the network, and communicating the data based at least in part on the priority of the data and the status of the network. (Ex. 2 at Abstract).

22. Communications networks typically include multiple nodes connected by links and are typically bandwidth constrained such that there is more data to be communicated than bandwidth available at any given point in time. (*Id.* at 1:11-13; 2:51-53). This constraint can be caused by the demand for bandwidth exceeding the supply and/or the available communications technology not supplying enough bandwidth to meet the needs of the user. (*Id.* at 2:54-57). In bandwidth-limited networks, less important data can clog the network and prevent more important data from getting through in a timely fashion or arriving at all. (*Id.* at 2:58-62). Networks can also include internal buffering to compensate for unreliable links in the communications network, which can lead to addition delay or data loss. (*Id.* at 2:62-65). Bandwidth can also change dynamically due to, for example, quality of service, jamming, signal obstruction, and priority reallocation. (*Id.* at 3:10-14).

23. There are known approaches for delivering data over a communications network, including QoS. (*Id.* at 4:16-17). QoS refers to capabilities of a network to provide various forms of guarantees with regard to data that is carried in a communications network. (*Id.* at 4:16-18). The primary goal of QoS is to provide priority such as dedicated bandwidth, controlled jitter and latency, and improved loss characteristics. (*Id.* at 4:27-31). Another important goal of QoS is to make sure that providing priority for one flow does not make other flows fail. (*Id.* at 4:31-32).

24. Current approaches to QoS often require every node in a network to support QoS or at least every node in the network involved in a particular communication to support QoS. (*Id.* at 4:35-38). This type of approach does not scale well because of the large amount of state information each node must maintain, and the overhead associated with setting up connections. (*Id.* at 4:46-49).

25. Furthermore, existing QoS solutions are often network specific and could only classify messages based on the header such that messages that looked the same to the current QoS systems may have different priorities based on message content. (*Id.* at 4:61-66). This can result in users requiring access to high-priority data being flooded by lower-priority data. (*Id.* at 4:66-67).

26. Existing QoS systems also could not provide QoS based on message content at the transport layer of the Open System Interconnection (OSI) seven-layer

protocol model. (*Id.* at 5:1-2; 1:50-56). The '028 Patent explains that the "Transmission Control Protocol (TCP)," which is the protocol at the transport layer, requires several forms of handshaking and acknowledgements to occur in order to send data," which can result in high latency and loss if the TCP hits time outs and is not able to send much, if any meaningful data over a network. (*Id.* at 3:51-57).

27. The inventors therefore recognized the need for systems and methods that provide QoS on the edge of a data network and a need for adaptive and configurable QoS systems and methos in a data network. (*Id.* at 5:17-20). The inventions disclosed in the '028 Patent were unconventional solutions to problems arising in the context of communications networks that used existing QoS systems that did not scale well, needed better jitter and latency control, needed improved data loss, and required better QoS than relying on the header. (*E.g.*, *id.* at 1:51-56, 2:58-62, 3:51-57, 4:27-31, 46-49, 4:66-5:32 5:17-20). The invention improved the technical functioning of computer data networks using an unconventional solution for prioritizing data as part of and/or at the top of the transport layer, dynamically changing rules for assigning priority to data, and communicating data based at least in part on the priority of the data and the status of the network.

## V. COUNT I
## (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 7,990,860)

28. Upon information and belief, Defendant has directly infringed claim 1 of the '860 Patent in California, in this District, and elsewhere in the United States, by making, using, selling, and/or offering for sale the including but not limited to the ASUS RT-AX88U PRO, ASUS RT-AX88U, ASUS RT-AX86U, ASUS RT-AX86U Pro, ASUS RT-AC5300, ASUS GT-AX11000, ASUS GT-AX11000 Pro, ASUS GT-AX6000, ASUS GT-AXE16000, and ASUS GT-BE98 PRO (each an "'860 Patent Accused Instrumentality" collectively "'860 Patent Accused Instrumentalities").

29. **Direct Infringement**. As explained below, each '860 Patent Accused Instrumentality is a processing device that infringes claim 1 of the '860 Patent. The '860 Patent Accused Instrumentalities implement a method for communicating data over a network to provide quality of service, the method including: performing by at least one processing device, at least: receiving data at a data communication system operating on a node at an edge of a network.




(*E.g.*, https://www.asus.com/us/networking-iot-servers/wifi-routers/asus-gaming-routers/rt-ax88u ).



[Adaptive QoS] Introduction and settings of QoS on ASUS Router

Last Update : 2023/04/25 17:54

SEND TO EMAIL | OPEN ON YOUR SMART PHONE

[Adaptive QoS] Introduction and settings of QoS on ASUS Router

**What is QoS?**

Quality of Service (QoS) ensures bandwidth for high-priority tasks and applications. You can choose one of three QoS types based on your needs through the following function introductions and usage scenarios.



(*E.g.*, https://www.asus.com/support/faq/1010935/).




(*E.g.*, https://www.asus.com/us/content/asuswrt).

These aspects of the Accused Instrumentalities (*e.g.*, "Share your internet connection..." "Guests cannot access your primary network..." "Traffic Analyzer gives you an at-a-glance view of what's happening on your network..." "Adaptive QoS optimizes inbound and outbound bandwidth...) show that the '860 Patent Accused Instrumentalities receive internet traffic, manage inbound/outbound

traffic, control communication between WAN and LAN, and operate as the network gateway between external and internal networks, which is classic "edge of a network" functionality.

30. The '860 Patent Accused Instrumentalities perform the step of determining a network status from a plurality of network statuses based on analysis of network measurements. The '860 Patent Accused Instrumentalities can determine a network status from a plurality of network statuses based on analysis of network measurements.

**Adaptive QoS includes the following 3 features:**

1. Bandwidth Monitor
2. QoS
3. Web History

(*E.g.*, https://www.asus.com/support/faq/1044327/#A1). The '860 Patent Accused Instrumentalities can check the status of the router using the Bandwidth Monitor.

# [Adaptive QoS]Bandwidth Monitor Introduction and Setup guide

Last Update : 2023/05/02 15:52

SENT TO YOUR EMAIL | OPEN ON YOUR SMARTPHONE

[Adaptive QoS]Bandwidth Monitor Introduction and Setup guide

**What is Bandwidth monitor**

By using Bandwidth monitor, you can see the instant bandwidth usage of total download and upload. Also, you can see the instant data for each client.

The dashboard below shows router's current upload and download speed on the internet.




The Device bandwidth table shows the current bandwidth of each device.

The Device bandwidth table shows the current bandwidth of each device.




(*E.g.*, https://www.asus.com/support/faq/1044327/#A1). The ’860 Patent Accused Instrumentaltes determine network status from analyzing network measurements, such as upload and download bandwidth on different devices

31. The ’860 Patent Accused Instrumentalties perform the step of selecting a mode from a plurality of modes based on the determined network status, wherein each of the plurality of modes corresponds with at least one of the plurality of network statuses, wherein each of the plurality of modes comprises a user defined sequencing rule. The ’860 Patent Accused Instrumentalties with Adaptive QoS also allow the user to select a Traditional QoS setting.




(*E.g.*, https://www.youtube.com/watch?v=X1W_ZH9gMl0). Adaptive QoS allows users to select presets that can prioritize specific types of traffic or situations.




(*E.g.*, https://www.youtube.com/watch?v=X1W_ZH9gMl0). As specified in the Adaptive QoS configuration screen, "the APPs with higher priority will get better bandwidth over another when the APPs are competing for limited bandwidth." For example, the user defined rules are that:

- Web Surfing is highest priority
- Gaming is second higher priority
- Video and Audio Streaming is third priority
- VoIP and Instant Messaging is fourth priority
- File Transferring is fifth priority
- Others is lowest priority

With these user-defined rules, network status and selected network mode pairs can be extrapolated as such:

- If the network status is that Web Surfing is demanding 100 MB/s of upload and download bandwidth, and Gaming is demanding 10 MB/s of download bandwidth, the selected network mode is that: gaming will not be prioritized, so only Web Surfing traffic will be allowed for upload and download

- If the network status is that Web Surfing is demanding 50 MB/s of both upload and download bandwidth, Gaming is demanding 50 MB/s of both upload and download bandwidth, and Video and Audio Streaming is demanding 10 MB/s of download bandwidth, the selected network mode is that Web Surfing and Gaming will each be allowed, but Video and Audio Streaming will be deprioritized, delayed, or blocked.

Similarly, there are numerous other plurality of modes that can be extrapolated based on network status based on these user-defined sequencing rules.



(*E.g.*, https://www.asus.com/au/support/faq/1008717/).

2. Click priority tag to show all devices with color clicked-tag.




3. Click "Show All" to return to the default display status.




(*E.g.*, https://www.asus.com/au/support/faq/1008717/).

32. The '860 Patent Accused Instrumentalities perform the step of prioritizing the data at the data communication system by assigning a priority to the data, wherein prioritizing the data comprises sequencing the data based at least in part on the user defined sequencing rule of the selected mode. Both Traditional and Adaptive QoS implemented on the '860 Patent Accused Instrumentalities prioritize the data at the data communication system by assigning a priority to the data, wherein prioritizing the data comprises sequencing the data based at least in part on the user defined sequencing rule of the selected mode. In the Traditional QoS setting, as shown below in the configuration screen, a user can manually

assign priorities to data, which causes the data to be sequenced based on the user defined sequencing rules.

**Traditional type:**

Traditional QoS type offers you advanced configure item, including port, protocol and transferred. QoS type switching will only keep the priority configuration for each client.

1. In advanced, there are two setting interfaces in traditional QoS type (1) User-defined QoS rules and (2) User define priority.You can click the drop-down list at upper right corner to change the interface.




User-defined QoS rules




(*E.g.*, https://www.asus.com/support/faq/1010951/).

33. The 860 Patent Accused Instrumentalities perform the step of determining at least one of an effective link speed and a link proportion for at least one link. QoS rules are used to determine the bandwidth for each device or channel connected to the router's network.



6. Set the range for the transferred speed.

Lots of QoS can define the priority of specific ports and QoS always define the HTTP@80 port with highest priority. Many network application programmers know this rule so they let their program use the 80 port to transfer the data to have the highest priority. This kind of non web-surfing program can also use the 80 port and it may decrease your web surfing speed even you set the traditional QoS rules. Because of this, you can use the "Transferred" to define the different roles of the same port based on the cumulated session size.

Please refer to the defaulted rules:
There are two QoS rules for the 80 port, (1) Web surf and (2) File Transfer. If each 80 port cumulated session size is under 512 KB, it may be from normal web surfing.
If the cumulated session size is over 512KB, it may be a file download via 80 port.
The purpose of our default rules is to set file transfer with low priority so it would not influence the web surfing.
If you want the high file download speed via HTTP, you can modify the default rules.

* The cumulated session size is a summation of upload stream and download stream.

User Specify Rule List (Max Limit : 32)

| Service Name | Source IP or MAC | Destination Port | Protocol | Transferred | Priority | Add / Delete |
|---|---|---|---|---|---|---|
| PPTV | 6C:71:D9:59:20 | 4004,8008 | TCP/UD | ~ KB | High | |
| Web Surf | | 80 | tcp | 0~512 | Highest | |
| HTTPS | | 443 | tcp | 0~512 | Highest | |
| File Transfer | | 80 | tcp | 512~ | Low | |
| File Transfer | | 443 | tcp | 512~ | Low | |



(*E.g.*, https://www.asus.com/support/faq/1010951/).

34. The 860 Patent Accused Instrumentalities perform the step of metering inbound data by shaping the inbound data at the data communications system for the at least one link. Users can set up the download (inbound) bandwidth priorities:

The current settings are automatically changed after filling the upload and download bandwidth.


Set up the Upload and Download rate limits

Upload Bandwidth

| Upload Priority | Minimum Reserved Bandwidth | Maximum Bandwidth Limit | Current Settings |
|---|---|---|---|
| Highest | 80 % | 100 % | 32 ~ 40 Mb/s |
| High | 10 % | 100 % | 4 ~ 40 Mb/s |
| Medium | 5 % | 100 % | 2 ~ 40 Mb/s |
| Low | 3 % | 100 % | 1.2 ~ 40 Mb/s |
| Lowest | 2 % | 95 % | 0.8 ~ 38 Mb/s |

Download Bandwidth

| Download Priority | Maximum Bandwidth Limit | Current Settings |
|---|---|---|
| Highest | 100 % | 0 ~ 100 Mb/s |
| High | 100 % | 0 ~ 100 Mb/s |
| Medium | 100 % | 0 ~ 100 Mb/s |
| Low | 100 % | 0 ~ 100 Mb/s |
| Lowest | 100 % | 0 ~ 100 Mb/s |

The Highest Priority packet

The default ACK, SYN and ICMP packets are used to improve the game smoothness.

☑ ACK ☑ SYN ☐ FIN ☐ RST ☑ ICMP

Apply

11. Set up the Download Bandwidth

The value 0 means that there is no limit for download bandwidth.
Generally speaking, it is unnecessary to set the download bandwidth limit because the download priority depends on the upload packet priority.

(*E.g.*, https://www.asus.com/support/faq/1010951/).




(*E.g.*, https://demoui.asus.com/QoS_EZQoS.asp).

In the above example:

- "inbound bandwidth" corresponds to incoming/download traffic,
- "ensures" bandwidth implies active traffic management,
- and QoS shaping occurs "on both wired and wireless connections" at the router.

This is traffic shaping behavior because the router:

- allocates bandwidth proportions,
- enforces minimum/maximum rates,
- and controls incoming traffic distribution across services.

Traditional QoS

Traditional QoS can be customized to set the maximum and minimum bandwidth values and priority levels for various services and applications.

Example: If you have a bandwidth of 100Mbps at home, and the family members mainly use the internet for gaming and web surfing, the network settings can be adjusted according to family's needs. The web surfing level can be set as the highest priority, followed by the games level. The bandwidth allocation for browsing can be set between 20% to 70% of the total bandwidth, which means that the browsing will have a guaranteed minimum bandwidth of 20Mbps and will not use more than 70Mbps of the total bandwidth. Then, the remaining bandwidth will be allocated for gaming.

For detailed setting, please refer to the related topics. [Adaptive QoS] How to set up QoS- Traditional type?

metering inbound data by shaping the inbound data at the data communications system

(*E.g.*, https://www.asus.com/support/faq/1010935).

35. The '860 Patent Accused Instrumentalities perform the step of metering outbound data by policing the outbound data at the data communications system for at least one link.

User- define priorities




metering outbound data by policing the outbound data at the data communications system for the at least one link

10. Set up the Upload rate limit

There are two columns of upload bandwidth, Minimum reserved bandwidth and maximum bandwidth limit.
Minimum reserved bandwidth means that the QoS reserved bandwidth for specific priority when the upload bandwidth is not enough.
For example, the value 80 of highest priority is that QoS reserves 80% of upload bandwidth for the highest priority.
Maximum bandwidth limit means the maximum bandwidth which specific priority can use.
For example, the value 95 of lowest priority is that the lowest priority application can only use the 95% of bandwidth even there are no any other application use the network.
The current settings are automatically changed after filling the upload and download bandwidth.

(*E.g.*, https://www.asus.com/support/faq/1010951/).

36. The '860 Patent Accused Instrumentalities perform the step of communicating the data from the data communications system, wherein communicating the data comprises communicating the data based at least in part on at least one of: the priority of the data, the effective link speed, and the link proportion.




(*E.g.*, https://www.asus.com/support/faq/1010951/).

37. The '860 Patent Accused Instrumentalities perform a step wherein at least the steps of receiving and prioritizing occur at a transport layer of a protocol stack. The TCP is a protocol in the transport layer:

User-defined QoS rules




2. Select the Service




(*E.g.*, https://www.youtube.com/watch?v=t2rsUDIsx_w).

38. **Indirect Infringement**. Upon information and belief, Defendant has been and now is indirectly infringing by way of inducing infringement and contributing to the infringement of claim 1 of the '860 Patent in the State of California, in this District, and elsewhere in the United States, by providing the Accused Instrumentality for use as described above by Defendant's customers. Defendant advertised, offered for sale, and/or sold the '860 Patent Accused

Instrumentality to its customers for use in a manner that Defendant knew infringed claim 1 of the '860 Patent. For example, Defendant provided marketing material showing that the '860 Patent Accused Instrumentality, when used, infringes claim 1 of the '860 Patent. (*Supra* ¶¶29-37 (identifying marketing materials)).

39. Plaintiff sent a letter to Mr. Steve Chang at Defendant on June 26, 2024, identifying the '860 Patent, describing what the claims covered, and identifying a product that required a license to the '860 Patent. On information and belief, since Defendant became aware of the '860 Patent and the infringement at least as of the date of receipt of the letter dated June 26, 2024, Defendant is and has been committing the act of inducing infringement by specifically intending to induce infringement by providing the '860 Patent Accused Instrumentality to its customers and by aiding and abetting its use as demonstrated by the marketing materials in a manner known to infringe by Defendant. Since becoming aware of the infringing use of the '860 Patent Accused Instrumentality, Defendant knew that the use of the '860 Patent Accused Instrumentality by its customers as instructed constituted direct patent infringement. Despite this knowledge, Defendant continued to encourage and induce its customers to use the '860 Patent Accused Instrumentality to infringe as described above and provided instructions for using the Accused Instrumentality to infringe, including through instructional materials, support, and user's guides. Exemplary materials are cited above. (*Supra* ¶¶29-37 (identifying marketing materials)). Defendant therefore knowingly induced

infringement and specifically intended to encourage and induce the infringement of the ‘860 Patent by its customers.

40. On information and belief, since Defendant became aware of the infringement at least as of the date of receipt of the letter dated June 26, 2024, Defendant is and has been committing the act of contributory infringement by intending to provide the identified ‘860 Patent Accused Instrumentality to its customers knowing that it is a material part of the invention, knowing that its use was made and adapted for infringement of the ‘860 Patent, and further knowing that the accused use of the ‘860 Patent Accused Instrumentality is not a staple article or commodity of commerce suitable for substantially non-infringing use. As described above, Defendant was aware that all material claim limitations are satisfied by the use and implementation of the ‘860 Patent Accused Instrumentality by Defendant’s customers in the manner described above yet continued to provide the ‘860 Patent Accused Instrumentality to its customers knowing that it is a material part of the invention. (*Supra* ¶¶29-37 (identifying marketing materials)). As described above, since learning of the infringement, Defendant knew that the use and implementation of the ‘860 Patent Accused Instrumentality by its customers was made and adapted for infringement of the ‘860 Patent. (*Id.*). A new act of direct infringement occurred each time a customer implemented and/or used the ‘860 Patent Accused Instrumentality in the manner described above. After Defendant became aware that the use of the ‘860 Patent Accused Instrumentality

infringes at least one claim, Defendant knew that each such new use was made and adapted for infringement of the ‘860 Patent and Defendant continued to advertise and provide the ‘860 Patent Accused Instrumentality for such infringing activities. (*Supra* ¶¶29-37 (identifying marketing materials)). Furthermore, as described more fully above, the 860 Patent Accused Instrumentality has functionality designed to infringe and is therefore not a staple article or commodity of commerce suitable for substantially non-infringing use. (*Id.*).

41. Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the ‘860 Patent.

42. Plaintiff has been damaged as a result of Defendant’s infringing conduct. Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such Defendant’s infringement of the ‘860 Patent, *i.e.*, in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

43. On information and belief, Defendant was aware of the infringement since at least the receipt of the letter dated June 26, 2024. Defendant had actual knowledge of the ‘860 Patent at least as early as when they received the letter from Plaintiff dated June 26, 2024. Defendant knew of its infringement since at least that date as a result of the letter. Defendant has therefore also known that the use of the ‘860 Patent Accused Instrumentality by its customers infringed at least the

asserted claim of the '860 Patent since at least the date they received the letter. As a result of the letter, Defendant should have known that its actions constituted an unjustifiably high risk of infringement. Despite the letter and knowledge that the risk of infringement was either known or so obvious that it should have been known, Defendant continued its infringing actions. Defendant's infringement thus has been willful, subjecting it to treble damages in accordance with 35 U.S.C. § 284 as well as an award to Plaintiff of its attorneys' fees in accordance with 35 U.S.C. § 285.

44. Unless a preliminary and permanent injunction is issued enjoining Defendant and all others acting in active concert therewith from infringing the '860 Patent, Plaintiff will be greatly and irreparably harmed.

## VI. COUNT II
## (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 7,769,028)

45. Upon information and belief, Defendant has directly infringed claim 13 of the '028 Patent in California, in this District, and elsewhere in the United States, by making, using, selling, and/or offering for sale the ASUS RT-AX88U, ASUS RT-AX86U, ASUS RT-AC5300, ASUS GT-AX11000, ASUS GT-AX6000, and ASUS GT-AXE16000 (each an "'028 Patent Accused Instrumentality" collectively "'028 Patent Accused Instrumentalities").

46. **Direct Infringement**. As explained below, each '028 Patent Accused Instrumentality comprises a system for communicating data that infringes claim 13

of the '028 Patent. The Accused Instrumentality comprises a data prioritization component adapted to assign a priority to data, wherein the prioritization occurs at least one of in a transport layer of a network communications protocol stack of a data communication system, and at a top of the transport layer of the network communications protocol stack of the data communication system.




(*E.g.*, https://www.asus.com/us/networking-iot-servers/wifi-routers/asus-gaming-routers/rt-ax88u).

# [Adaptive QoS] Introduction and settings of QoS on ASUS Router

Last Update : 2023/04/25 17:54

SEND TO EMAIL | OPEN ON YOUR SMART PHONE

[Adaptive QoS] Introduction and settings of QoS on ASUS Router

**What is QoS?**

Quality of Service (QoS) ensures bandwidth for high-priority tasks and applications. You can choose one of three QoS types based on your needs through the following function introductions and usage scenarios.




(*E.g.*, https://www.asus.com/support/faq/1010935/). All the '028 Patent Accused Instrumentalities are a system for communicating data, the system including: a data prioritization component adapted to assign a priority to data, wherein the prioritization occurs at least one of: in a transport layer of a network communications protocol stack of a data communication system, and at a top of the transport layer of the network communications protocol stack of the data communication system:




(*E.g.*, https://www.youtube.com/watch?v=X1W_ZH9gMl0). In the ASUS Adaptive QoS configuration, a user can use drag-and-drop to change the priority of applications and tasks. This supports the presence of:

- a prioritization component,
- assigning priority levels to data traffic, and
- queue/scheduling behavior.

ASUS Traditional QoS documentation states users can configure QoS rules using:

- protocol,
- destination port,
- transferred size.

Specifically, the '028 Patent Accused Instrumentalities state: "Choose the type of protocol." Protocols and ports are transport-layer constructs:

- TCP
- UDP
- TCP/UDP destination ports

5. Choose the type of protocol.




(*E.g.*, https://www.asus.com/support/faq/1010951).

4. The destination port will show up automatically based on the service you choose.



(*E.g.*, https://www.asus.com/support/faq/1010951). Therefore, Defendant is publicly disclosing:

- packet prioritization, and
- based on transport-layer information.

47. The ‘028 Patent Accused Instrumentality comprises a mode selection component adapted to select at least one mode based at least in part on the status of the network. The mode selection component for the ‘028 Patent Accused Instrumentalities choose modes based on the status of the network as explained by the following configuration example First, the router is set up such that its maximum upload and download bandwidth is 100 MB/s.



(*E.g.*, https://tessco-product-images-commerce-cloud-prod.s3.amazonaws.com/Resources/607030_mdsorbit_brochure.pdf). Next, the priorities for specific kinds of traffic are set by dragging each type of traffic up and down:




(*E.g.*, https://www.youtube.com/watch?v=X1W_ZH9gMl0). As specified in the Adaptive QoS configuration screen, "the APPs with higher priority will get better bandwidth over another when the APPs are competing for limited bandwidth." For example, the rules are that:

1. Web Surfing is highest priority
2. Gaming is second higher priority
3. Video and Audio Streaming is third priority

4. VoIP and Instant Messaging is fourth priority
5. File Transferring is fifth priority
6. Others is lowest priority

With these prioritization rules, network status and selected network mode pairs can be extrapolated as described by the following examples:

- If the network status is that Web Surfing is demanding 100 MB/s of upload and download bandwidth, and Gaming is demanding 10 MB/s of download bandwidth, the selected network mode is that: gaming will not be prioritized, so only Web Surfing traffic will be allowed for upload and download
- If the network status is that Web Surfing is demanding 50 MB/s of both upload and download bandwidth, Gaming is demanding 50 MB/s of both upload and download bandwidth, and Video and Audio Streaming is demanding 10 MB/s of download bandwidth, the selected network mode is that Web Surfing and Gaming will each be allowed, but Video and Audio Streaming will be deprioritized, delayed, or blocked.

Similarly, there are numerous other plurality of modes that can be extrapolated based on network status based on these user-defined sequencing rules. Therefore, the '028 Patent Accused Instrumentalities have a mode selection component that is adapted to select a mode based in part on the network status.

48. The '028 Patent Accused Instrumentality comprises a data communications component adapted to communicate the data based at least in part on the priority of the data and the status of the network, the data prioritization component being adapted to assign priority to the data based on prioritization rules, wherein the prioritization rules are selected based upon the selected at least one

mode, wherein the data is communicated at a transmission rate metered based at least in part on the status of the network. Prioritization Rules are set on the '028 Patent Accused Instrumentalities as shown by the configuration screen below. For example, the rules are that:

1. Web Surfing is highest priority
2. Gaming is second higher priority
3. Video and Audio Streaming is third priority
4. VoIP and Instant Messaging is fourth priority
5. File Transferring is fifth priority
6. Others is lowest priority




(*E.g.*, https://www.youtube.com/watch?v=X1W_ZH9gMl0, Video: 00:12).

As specified in the Adaptive QoS configuration screen, "the APPs with higher priority will get better bandwidth over another when the APPs are competing for limited bandwidth." This means that the data will be communicated based on the network status, the prioritization rules, and the mode of the network based on those rules. Following these rules, the data is communicated at a transmission rate metered based at least in part on the status of the network.




(*E.g.*, https://www.asus.com/support/faq/1010951/).

49. Plaintiff is in compliance with any applicable marking and/or notice provisions of 35 U.S.C. § 287 with respect to the '028 Patent.

50. Plaintiff has been damaged as a result of Defendant's infringing conduct. Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such Defendant's infringement of the '028

Patent, i.e., in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## V. JURY DEMAND

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

a. Judgment that claim 1 of United States Patent No. 7,990,860 has been infringed and is being infringed, either literally and/or under the doctrine of equivalents, directly and/or indirectly, by Defendant;

b. Judgment that claim 13 of United States Patent No. 7,769,028 was infringed, either literally and/or under the doctrine of equivalents by Defendant;

c. Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, and an accounting of all infringements and damages not presented at trial;

d. Judgment that Defendant's infringement of claim 1 of United States Patent No. 7,990,860 was willful and award Plaintiff treble damages in accordance with 35 U.S.C. § 284 as well as its attorneys' fees in accordance with 35 U.S.C. § 285;

e. Judgment that Defendant be preliminarily and permanently enjoined from any further activity or conduct that infringes claim 1 of United States Patent No. 7,990,860;

f. Judgment that Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein; and

g. Judgment that Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

October 22, 2026

Respectfully Submitted,

*/s/ Stephen M. Lobbin*
Stephen M. Lobbin
SML Avvocati P.C.
969 Hilgard Avenue, Suite 1012
Los Angeles, CA 90024
(949) 636-1391
sml@smlavvocati.com

*Attorneys for Plaintiff*
*Vision Sphere Labs LLC*

OF COUNSEL:

David R. Bennett
(motion for *pro hac vice* to be filed)
Direction IP Law
P.O. Box 14184
Chicago, IL 60614-0184
(312) 291-1667
dbennett@directionip.com